HAYES et al. *v.* NEW YORK GOLD MINING COMPANY OF COLORADO.

PLEADING — *non damnificatus.* In an action on a bond with condition to perform certain specific acts as, *e. g.,* to surrender a mill at the expiration of a lease, *non damnificatus* is not a good plea.

LANDLORD AND TENANT — *right to remove fixtures.* A tenant has a right to remove trade fixtures, such as boilers and an engine in a quartz mill, during his tenancy.

And if he sells such fixtures to his landlord, and covenants to deliver them together with the premises occupied by him, at the expiration of his term, it is no defense to an action on his bond to say that prior to the sale the fixtures were attached to the freehold, and that the landlord was not, at the date of the bond or subsequently, the owner of the freehold.

SALE ON EXECUTION — *title to realty.* The title to land sold on execution remains in the debtor until, by the sheriff's deed, it is conveyed to the purchaser.

FIXTURES — *conveyed with land.* Fixtures erected upon land by the debtor after a sale under execution and before the sheriff's deed is made, pass, with the land, to the purchaser upon the execution of such deed, and the same is true as to fixtures purchased by the debtor from a tenant holding under him.

COVENANTS: REAL — *what are.* A bond executed by a tenant in possession to his landlord, the latter being the owner of the premises demised, setting forth a sale by the tenant to the landlord of certain fixtures then upon the demised premises, and covenanting to surrender the fixtures and the premises in good repair at the expiration of the lease, and to perfect the title to the fixtures, and to pay taxes, runs with the land, and passes to grantees in a sheriff's deed made after the execution of such bond.

BOND — *construction of.* To an action on a bond conditioned to surrender certain premises and perform other specific acts on a day named, it is no defense to say that the plaintiff was not the owner of the premises at the commencement of the suit, and had never been evicted from the premises.

*Error to District Court, Gilpin County.*

THE plaintiff below, present defendant in error, declared in debt upon a bond, dated November 28, 1870, executed by Martin B. Hayes, Samuel Mishler, B. C. Waterman, with condition as follows:

WHEREAS, The said above bounden, Martin B. Hayes, is now in the possession of the Enterprise mill, under a lease from the said New York Gold Mining Company of Colorado; and,

WHEREAS, The said Hayes has this day sold to said company, two boilers and one engine now in said mill and in good order, at an agreed price; and,

WHEREAS, Said engine and boilers are to be left in said mill, to be used by the said Hayes in said mill until the expiration of said lease, to wit: on the 20th day of April, A. D. 1871; and,

WHEREAS, By the terms of said lease, said Hayes is bound to pay the taxes assessed upon said mill for years 1869 and 1870.

Now, if the said Hayes shall, upon the expiration of his said lease, to wit: on the 20th day of April, A. D. 1871, quit and surrender the possession of said Enterprise mill and its appurtenances to said New York Gold Mining Company of Colorado, its successors or assigns, and shall, at said time, leave said mill, engine and boilers in as good repair as they now are, ordinary wear and tear excepted, and shall perfect the title to said engine, so that the same shall be complete and without any lien or claim of any other person on said engine, and shall pay or cause to be paid said taxes upon said mill and appurtenances, for the said years 1869 and 1870, as by said lease he is bound to do, then this obligation to be void and of no effect, otherwise to remain in full power and effect.

The defendants filed six pleas, the first of which was *non damnificatus*. In the second, after craving oyer of the bond and setting it out in full, the defendants averred, that

on the 24th of May, 1870, the engine and boilers in the bond mentioned were attached to, and became part of, the premises leased to the said Hayes, and that the plaintiff was not, at the time of the making of the bond, nor at any time since that time, the owner of the premises demised to said Hayes, concluding with verification.

The fourth and fifth pleas were substantially the same as the second. In the third plea, after craving oyer of the bond and setting it out in full, the defendants averred that the engine and boilers in the bond mentioned were, on the 24th day of May, 1870, attached to and became part of the realty of the premises leased to said Hayes.

The defendants then averred that, at the May term, A. D. 1869, of the district court of Gilpin county, four several judgments were recovered against the said plaintiff, by parties and for sums named and set forth in the plea, which judgments became a lien upon the said Enterprise mill, which was then and there owned by the said plaintiff. That the plaintiffs in said judgments sued out executions thereon, and that, upon the 24th August, 1869, the property demised to said Hayes was sold to Charles Morgan et al., to satisfy said executions, and certificates of sale were thereupon made to the said Charles Morgan et al., which were afterward duly assigned to Rosswell G. Ralston and John W. Burke, that the premises not having been redeemed, the sheriff of the county afterward, and on the 20th day of March, A. D. 1871, made, executed and delivered, a deed, in due form of law, of the said premises to the said Ralston and Burke, concluding with verification.

In the sixth plea, after craving oyer of the bond, and setting it out, the defendants averred that the engine and boilers in the bond mentioned were, on the 24th May, 1870, attached to, and became part of, the realty let to the said Hayes, and that, at the commencement of the suit, plaintiff was not the owner of said Enterprise mill, engines, boilers, etc., and that it had never been evicted therefrom.

A demurrer to these pleas was sustained, and the defendant sued out this writ of error.

Mr. Justice WELLS took no part in the decision.

Mr. G. B. REED, for plaintiffs in error.

Mr. H. M. TELLER and Mr. WILLARD TELLER, for defendant in error.

HALLETT, C. J. The bond upon which this action is founded shows that Hayes, the principal obligor, was in possession of the Enterprise mill, under a lease from defendant in error, and that he had sold to the latter, two boilers and one engine, then in the mill, to be delivered at the expiration of his term. The conditions of the bond require Hayes to surrender the mill, and the engine and boilers, in as good repair as they then were, at the expiration of the lease ; to perfect the title to the engine, and to pay the taxes assessed against the property for the years 1869 and 1870. In the declaration, breaches were assigned upon each of these conditions, and as we had occasion to say in another cause, each of the breaches so assigned, in connection with the body of the declaration, is to be regarded as a separate count. *Sopris* v. *Lilly et al.*, 1 Col. 266. Six pleas were interposed by plaintiffs in error, to which a demurrer was sustained, and we are asked to review the action of the court in respect to them. The first plea was *non damnificatus*, which may be pleaded in an action upon a bond to indemnify and save harmless, but not when the bond is conditioned for the performance of such acts as were specified in this instrument. *McClure* v. *Erwin*, 3 Cow. 332 ; *The State* v. *Gresham*, 1 Ind. 190.

In the second, fourth and fifth pleas, it is alleged that the boilers and engine were attached to, and became part of, the realty, on the 24th day of May, 1870, and that defendant in error was not the owner of the estate at the time the bond was made, or subsequently. Considered with reference to the undertaking to sell and deliver the engine and boilers, the defense set up in these pleas is, in substance, that, at the time of sale, these articles were attached to the freehold of some one not a party to the contract. If from this we

are to understand that the subject of sale was the property of a stranger, the action stands confessed, for one of the breaches of the condition of the bond assigned in the declaration is, that Hayes was not the owner of the engine at the time of the sale to defendant in error. If, on the other hand, the purpose of these pleas was to show a right of action on the bond in the owner of the freehold, it is plain that they have not that effect. According to the pleas, defendant in error was not the owner of the land at the time the bond was given, and, therefore, the right of action upon the bond could not pass to an assignee of the land. *Spencer's case*, 1 Smith's L. C. (5th Am. ed.) 125. Hayes was a tenant in possession of the property, and the boilers and engine, if owned by him, were trade fixtures which he had a right to remove during the tenancy. Taylor's L. & T. (5th ed.), § 545. If he owned them, he could sell them as personal property ; and, if he did not own them, he is liable in damages for his failure to perform his contract.

The third plea presents a different question. It is there alleged that the Enterprise mill was, on the 24th day of August, 1869, sold under several executions, issued upon judgments previously obtained against defendant in error; and that in pursuance of such sale, on the 20th day of March, 1871, Ralston & Burke obtained a sheriff's deed for the property. It is also alleged that the boilers and engine were attached to, and became part of, the realty on the 24th day of May, 1870, which, it will be remembered, was prior to the making of the bond and the sheriff's deed. It is also alleged that defendant in error was owner of the mill at the time the judgments were obtained, and that the property was sold to satisfy the judgments. Upon this plea, it appears that defendant in error was the owner of the legal estate in the mill property at the time the engine and boilers were attached to it, and at the date of the bond, for the title was not divested by the sale under execution. *Catlin* v. *Jackson*, 8 Johns. 406 ; *Gorham* v. *Wing*, 10 Mich. 486. Afterward, however, and on the 20th day of March,

1871, the mill was conveyed to Ralston & Burke by the sheriff's deed, and this was prior to the forfeiture of the bond.

It is true that the purchasers at the sheriff's sale acquired no right to the boilers and engine at the time of the sale, as those articles were not then in the mill. But they were subsequently attached to the freehold by Hayes, and thus became part of the realty, subject to the tenant's right of removal. Note to *Elwer* v. *Mawe*, 2 Smith's L. C. By the sale to defendant in error, the right of removal was extinguished, and the title to the fixtures united with the fee of the land. Buildings erected by a tenant, under a covenant to surrender them at the end of the term, cannot be removed by the tenant, and the same rule must obtain in regard to all fixtures placed upon land by a tenant, under an agreement to surrender them with the land at the end of the term. Taylor's L. & T. (5th ed.), § 549.

A condition of the bond in suit is, that the mill and its appurtenances, and the boilers and engine, shall be surrendered at the end of the term in good repair, which is similar to the covenant referred to in Mr. Taylor's text. After the sale by Hayes, the relation of the fixtures to the land was the same as if they had been erected under an agreement to surrender them at the end of the term, which would make them part of the realty, for all purposes. This being true, they would pass with the land by any conveyance effectual to transfer it. *Preston* v. *Briggs*, 16 Vt. 124; *Kittridge* v. *Woods*, 3 N. H. 503. It is considered that fixtures erected upon land by a mortgagor, after the lien of the mortgage has attached, are subject to it, and the same rule appears to be applicable to land sold upon execution. *Roberts* v. *The Dauphin*, 19 Penn. St. 71. It is said that crops sown after a sale upon execution, and which have not been harvested at the date of conveyance, pass to the vendee (*Parker* v. *Storts*, 15 Ohio St. 351), and upon the same principle, all fixtures annexed to the land at the time of the conveyance must pass with the freehold.

This brings us to the principal question in this case, which is, whether the covenants in the bond are such as run with the land and passed to the grantees in the sheriff's deed. As we have seen, the obligee in the bond on the 28th November, 1870, the date of the instrument, was the owner of the mill, which was essential in order that the covenants might take effect upon the land.   But the assignable quality of the covenants did not depend on the interest of the obligors in the land, since a covenant by a stranger to the estate may pass with it.   *Spencer's case*, 1 Smith's Lead. Cases, 125.   The form of the obligation is not material, for a covenant may be contained in an exception or proviso, or any words which evince the intention of the parties.   Taylor's L. & T., § 248, *et seq.*   What, then, is the legal effect of the bond in suit, considered with reference to the mill property therein described, which, at the time the bond was given, was in possession of Hayes as tenant to defendant in error? That it was intended to secure the due performance of certain acts respecting the estate demised to Hayes is expressly declared in the condition of the bond, and since the boilers and engine had become part of the realty, all the acts there specified refer to the realty alone.   They were acts affecting the quality and value of the premises demised, and therefore within the definition of real covenants which run with the land.   Taylor's L. & T., § 261; Rawle on Covenants for Title, 334.

Express authorities are not wanting to show that the conditions to surrender the premises in good repair, and to pay taxes, are covenants real, and as the engine was annexed to the land, the condition to perfect the title to it was equally so.   Taylor's L. & T., § 262.

Respecting the covenants to perfect the title to the engine, as well as the other conditions in the bond, it is to be observed that they were not to be performed until the 20th day of April, 1871, and, therefore, it cannot be said that they were broken as soon as made, and that thereby defendant in error became invested with an immediate right of action.

At the time designated for performing the conditions, the estate had passed to Ralston and Burke under the sheriff's deed, and therefore there was then no right of action in defendant in error. It is well settled that covenants real pass with the land to which they are annexed, to a purchaser at a sale under execution. Rawle on Covenants for Title, 352. I have not found any case in which the rule has been applied to a covenant which attached to the land after the sale, and before conveyance by the sheriff, as in this case. But it is believed that the principle is applicable to such covenants, and to whatever estate is acquired by the judgment debtor prior to the conveyance by the sheriff. Any other rule would divorce the covenant from the land for the benefit of which it was intended, and practically annul its obligation. The judgment debtor, not having the estate in the land, can suffer no injury from the breach, and if the grantee in the sheriff's deed cannot sustain an action upon the covenant, it would appear that no one would have such right. It is very certain that the judgment debtor is divested of the right of action, and if it is not extinguished, it must pass to the assignee of the land. Our conclusion is, that the facts set forth in the third plea are sufficient to bar the action, and it remains to consider the sufficiency of the sixth plea, concerning which very little need be said. In this plea it is alleged that defendant in error was not the owner of the Enterprise mill and appurtenances at the commencement of the suit, and had never been evicted or ousted therefrom. If the corporation was the owner of the premises at the time the condition of the bond is alleged to have been broken, the right of action then accrued, and the ownership at the commencement of the suit is of no importance. As to the averment that defendant in error had not been evicted, I do not discover any thing in the declaration to which it can be applied. There is no covenant in the bond for quiet enjoyment, nor did defendant in error complain of a disturbance of the possession. The plea is clearly insufficient, and the demurrer was very properly sustained to it.

The third plea is, however, good, and therefore the judgment of the district court is reversed and the cause remanded, with directions to that court to enter judgment for plaintiffs in error on the demurrer to that plea.

*Reversed.*