Manning et al. v. Strehlow.

1. In an action to determine an adverse claim filed against an application for a patent to a mining location, the issue is whether either party is entitled to a patent, and an instruction that it is for the jury to determine who had possession, and who had the right to possession, at the time of the commencement of the action, is error, and a verdict rendered thereunder that "the jury find the issues for the plaintiff, that he was in possession * * * at the time of the commencement of this action, and is now entitled to possession thereof," is bad.

2. In an action to determine an adverse claim to the "Mountain Boy Lode," the objection that plaintiff had parted with his interest in the same is not sustained by proof of a deed by him of the "First National Lode," by which name the Mountain Boy lode was called many years before, the evidence as to whether the identical territory was known by both names being conflicting, and the grantee testifying that she knew both claims, and that her deed did not cover any part of the Mountain Boy lode.

3. In an action to determine the right to a patent to a mining claim, where plaintiff claims under an original location and defendant under a relocation, defendant's allegation that plaintiff's claim was abandoned by allowing his interest to be sold under execution, from which sale he had not redeemed, is properly stricken out, and evidence thereof properly excluded, in the absence of any allegation that the sheriff executed a deed to the purchaser.

*Error to District Court of Custer County.*

This is a proceeding to determine an adverse claim filed against an application for patent to a mining loca-

tion. The property involved is the Mountain Boy lode, situate in Custer county. It was originally located on the 26th day of May, 1875, and the plaintiff below, August Strehlow, acquired title from the locators by conveyances and by judicial decrees. He went into possession, and appears to have continued in actual possession of the claim ever since, and to have expended a large amount of money in its development. It was supposed, however, by the ancestor of the present plaintiffs in error, Amos W. Manning, since deceased, that the plaintiff had suffered the property to become abandoned and subject to relocation; accordingly he, with one Fitzgerald, who subsequently transferred his interest to said Manning, entered upon the premises on March 6, 1882, and made an attempted relocation thereof. The defaults relied upon as working an abandonment of the claim were that the plaintiff had suffered his interest in the claim to be sold by the sheriff of Custer county on two certain writs of execution against him, from which sales he had not redeemed. That his father, an alien who had never declared his intention to become a citizen, having a judgment against him, had redeemed the property from the first sale, and afterwards caused it to be sold upon his own execution, and the certificate of sale to be made to a citizen, as trustee for him. And since rights in and to the mineral lands of the public domain are restricted by the acts of congress to citizens of the United States, and those who have declared their intention to become such, the attempts of Strehlow, Sr., to become the owner of this lode, through the intervention of a trustee, had the effect merely of restoring it to the government and to subject it to relocation and entry by a citizen. Manning applied for a patent to the lode a few months after his attempted relocation thereof, whereupon the plaintiff filed his adverse claim and brought this suit to establish his own right to the patent. Pending the action Manning died, and his heirs at law were substi-

tuted as defendants. The facts concerning the sheriffs' sales were set up in the answers, but stricken out by the court on motion of the plaintiff. Defendants offered to prove the same facts on the trial, but the testimony was rejected. It was also alleged in the answers that prior to the commencement of the action the plaintiff had conveyed all his interest in said Mountain Boy lode to his wife, Marie Strehlow, under the name of the "First National Lode," which was alleged to be another name for the same property. Defendants proved on the trial that plaintiff had executed a deed to his wife of all his interest in the First National lode, but the testimony was somewhat conflicting as to whether the two names embraced the same property. It also appeared that there never had been a regular location of a lode by the name of "First National," and, in addition to all, Marie Strehlow appeared as a witness for the plaintiff, and disclaimed any title to the Mountain Boy, and stated that her title to the First National did not include any portion of the territory of the former.

Messrs. WELLS, MACON and McNIEL, A. J. RISING and GEORGE S. ADAMS, for plaintiffs in error.

Messrs. BLACKBURN and DALE, for defendants in error.

BECK, C. J. Counsel for plaintiffs in error contend that this cause was tried on an erroneous theory in the court below, and that the proper issue involved was not submitted to the jury; that the issue tried was which party had the better right in the premises, or whether the plaintiff was entitled to possession as against the defendants' ancestor, whereas the jury should have been required to find whether either party was, under the local rules of miners, the acts of congress and the laws of the state, entitled to a patent from the United States; citing *McGinnis v. Egbert,* 8 Colo. 41; *Gwillim v. Donnellan,*

115 U. S. 45. Counsel for defendant in error contend as follows: "The question as to the right to receive a patent was not and should not have been before the court or jury; the officers of the land department of the United States decide that. Our court could only determine who is entitled to the possession of the disputed premises." Sec. 2326, ch. 6, R. S. U. S. "And if neither party has such right, the court so finds and adjudges; all of which was done in the present instance, as appears from this record." Act March 3, 1881.

We are of opinion that the point made by plaintiffs in error is well taken and must be sustained. In *McGinnis v. Egbert, supra*, in construing the foregoing sections of the acts of congress, we say: "This section (2326) makes it the duty of a person to file an adverse claim against the issuance of a patent within thirty days thereafter, and to commence proceedings in a court of competent jurisdiction to determine the question of the right of possession. As the law then stood, the party in whose favor the judgment was rendered became entitled to a patent. But the section was so amended by the act of March 3, 1881, that neither party was entitled to a judgment in his favor unless he was at the time of the adjudication entitled to a patent for the premises in controversy by virtue of a compliance with the mining laws. If neither party establishes such a right, the jury is required to find that fact, and the proceedings in the land office are stayed until a title is perfected." Technically speaking, neither party, in actions of this character, is possessed of the legal title, for that is in the United States. A possessory title is all that is possible under the circumstances. To entitle a party to a judgment in his favor it must appear that he has not only the right of possession, but that he has made a valid location of the premises in controversy, and, by virtue of a compliance with all the requirements of the mining laws, is entitled to a patent from the government. To this effect are the cases of *Gwillim v. Don-*

*nellan, supra,* and *Wolverton v. Nichols,* 119 U. S. 485.
See, also, *Becker v. Pugh,* 9 Colo. 589.

The issues, as submitted to the jury in the present
action, appear from the following instruction: "The jury
is further instructed that it is for you to determine —
*First,* who had possession of the premises in controversy
at the time of the commencement of this action; *second,*
who had the right of possession of the premises in con-
troversy at the time of the commencement of this action;
and should you find from the evidence that neither the
plaintiff nor the defendant was entitled to possession of
the ground in controversy at the time of the commence-
ment of this suit, you should so indicate by your ver-
dict."

The verdict returned by the jury was as follows: "We,
the jury, find the issues for the plaintiff, that he was in
possession of the Mountain Boy mining claim at the time
of the commencement of this action, and is now entitled
to possession thereof.     W. P. COLEMAN, Foreman." As
we said of the verdict in *McGinnis v. Egbert,* this verdict
conveys no information whether it was returned because
the plaintiff had established his title to the lode in the
manner required by law, or because the other party failed
to establish his title thereto.     It is clear that the proper
issues were not submitted to the jury.     But it is con-
tended on behalf of the defendant in error that this is a
chancery proceeding under the pleadings, and that the
verdict of a jury in such a case is only advisory, and may
be disregarded by the court; that since the court found
the issues for the plaintiff, Strehlow, and that he was
"the owner of the premises against all the world except
the United States," the proper issues have been adjudi-
cated.     The position is not maintainable.     This is not an
action under the state statute to determine the mere
question of the right of possession, but an action author-
ized by the laws of congress to determine the right of a
party to be invested with the fee.     The main question to

be determined is, as we have seen, which party, if either, has established title to the disputed premises, regardless of the particular form of the action, or which party may be in possession at the time of the commencement of the suit. In such actions the parties are entitled to jury trials, and consequently to correct instructions. In *Wolverton v. Nichols, supra,* referring to a section of the Montana statute, Mr. Justice Miller says: "But whatever may be the effect of the statute in an ordinary action which has no direct relation to a proceeding under the act of congress which we have referred to, we are of opinion that, as applicable to such cases, the instruction given by the court is entirely too restricted. The proceeding in this case commenced by the assertion of the defendants' claim to have a patent issued to them for the land in controversy. The next step was the filing of an adverse claim by the plaintiffs in the land office, and the present suit is but a continuation of those proceedings, prescribed by the laws of the United States, to have a determination of the question as to which of the contesting parties is entitled to a patent. The act of congress requires that a certified copy of the judgment of the court shall be filed in the land office and shall be there conclusive. And we must keep this main purpose of the action in view in any decision made with regard to the rights of the parties."

Two other objections to the proceedings below are made by counsel for plaintiff in error, which, in our judgment, are not sustainable. One is that the plaintiff, Strehlow, was not entitled to recover, for the reason that he had parted with his interest in the premises by a conveyance to his wife, Marie Strehlow, prior to the commencement of the action. The deed executed to the wife did not purport to convey the Mountain Boy lode, but the First National lode. It does not appear that any lode was ever located by the latter name, but that the Mountain Boy lode, many years prior to the commencement of this ac-

tion, was sometimes called by the name "First National."
The testimony is also conflicting whether the Mountain
Boy lode claim, as located and surveyed for patent, em-
braced the identical territory formerly known by the
name "First National." But a conclusive answer to the
objection is that Marie Strehlow appeared as a witness
on the trial, and disclaimed any title to the property in
controversy, testifying that she knew both claims, and
that her deed did not cover any part of the Mountain Boy
lode.

The other objection referred to above is that certain
allegations of the defendants' answers had been stricken
out by the court, setting up that plaintiff had been
wholly divested of his title to the premises in controversy
by virtue of certain sheriffs' sales thereof made against
him from which he had not redeemed, and that the time
for redemption had expired. It was not alleged that any
deed for the property had been executed by the sheriff
to the purchaser. This objection comes within the rule
laid down in *Hayes v. Mining Co.* 2 Colo. 273, that title
to real estate is not divested by sale under execution, but
remains in the debtor until the execution and delivery
of the sheriff's deed. The striking out of these para-
graphs of the answer, therefore, and the refusal of the
court on the trial to permit the allegations to be proved,
did not constitute error.

For the errors above noted, however, the judgment
must be reversed and cause remanded, which is accord-
ingly done.

                                          *Reversed.*